[No. 32515. Department One. February 15, 1954.]

ADELINE E. GORDON, *Appellant*, v. CHARLES H. GORDON, *Respondent.*[1]

[1]Reported in 266 P. (2d) 786.

*Kahin, Carmody & Horswill,* for appellant.

*Brethorst, Fowler, Dewar, Bateman & Reed,* for respondent.

HAMLEY, J.—In this proceeding to modify a decree of divorce, Mrs. Adeline E. Gordon seeks an increase in alimony from one hundred twenty-five dollars to seven hundred fifty dollars a month. Her petition was denied, and she appeals.

The parties were married on April 14, 1917. Appellant obtained a divorce on April 5, 1938, on the ground of cruel treatment rendering life burdensome. The custody of two sons, then fifteen and sixteen years of age, was awarded to the mother. Appellant was allowed $87.50 a month for the support of each child until his majority was attained. She was allowed one hundred twenty-five dollars a month alimony until her death or remarriage.

Under the terms of a property settlement agreement, approved by the court, appellant received certain bonds, stocks, the home furniture, an automobile, and the assignment of insurance policies on the life of respondent, having a face value of twenty thousand dollars. Respondent was required to pay the annual premiums on these policies, and also assumed community and other obligations of $7,450.

The boys were at college most of the time between entry of the divorce decree and the attainment of their majorities on April 7, 1940, and December 3, 1941, respectively. During this period, they lived at home with appellant on week ends and during vacations. Since the decree of divorce, appellant has lived at the home which was set over to her in the settlement agreement. This property has a value of $8,500 to $9,000, and consists of a five-room house situated on approximately one acre of land. Appellant still retains some of the stocks which were set over to her, together with the automobile and furniture. None of this property is encumbered with liens or mortgages.

Appellant has not sought gainful employment since entry of the divorce decree. During the last three years, however, she has accepted baby-sitting jobs when offered, with resultant nominal earnings. Since the sons became of age, appellant has devoted her time principally to the maintenance of her home and grounds. Her main interest has been in growing flowers, and she has never attempted to grow vegetables. She employs a gardener to do the heavy garden work.

In the period between 1940 and 1950, appellant suffered from inflammation of the eye, menopausal disturbances, and an arthritic condition of the back. The eye condition, diagnosed as tuberculosis, would have interfered with work involving constant use of the eyes. This condition has apparently cleared up, and would not now prevent her from doing light office work. There is nothing to indicate that the menopausal disturbances would have precluded her from being gainfully employed during most of this period. The arthritic condition has prevented her, and continues to prevent her, from engaging in heavy labor. Her doctor testified, however, that there were a great many light occupations which she could follow in her present condition. Appellant has not received medical treatment since February 10, 1950. In 1951, her doctor pronounced her "in good physical condition." She was sixty-one years old at the time of the hearing.

Appellant bases her request for additional alimony on the increased cost of living. She has sold her fur coat, diamond ring, and some securities, and has cashed a paid-up insurance policy to defray home and living expenses. The house needs a new roof and she needs medical and dental care. She has unpaid bills aggregating something over $225. She does not believe it would be feasible for her to sell the home and move to an apartment, as the rental on the kind of apartment in which she would want to live would be from one hundred to one hundred twenty-five dollars a month.

At the time the parties were divorced, Mr. Gordon was earning a salary of $7,200 a year as an employee of Seattle-First National Bank. His salary has gradually increased, and in 1951 his total income from salary, bonus and investments was $28,612.86, on which he paid a Federal income tax of $7,150.

In 1938, Gordon married his present wife, Verna G. Gordon. Since then, they have paid off the indebtedness which he owed at the time of the divorce. Their community property, which includes a home, furniture, automobile, personal effects, and securities, has a present market value of between $95,000 and $105,000. As vice-president of the bank, Gordon is required to expend substantial sums for entertainment and community activity, for which he does not receive reimbursement.

Gordon will be required to retire four and a half years from the date of the trial on a monthly pension of $425. There is the possibility that he may be forced to leave the bank before that time, at a reduced pension, because of failing health. He is under the care of a physician for hyperinsulism and an infection of the left eardrum. The hyperinsulism restricts his working hours to six and one half hours a day, with frequent rest periods. He now has no hearing in his left ear, and the hearing in his right ear is ten per cent impaired. Because of the condition of Gordon's health, it is necessary for his present wife to accompany him and do the driving on his frequent inspection trips to various branch banks.

Gordon has made all support, alimony, and other payments required by the divorce decree. His increases in salary through the years came as the result of his efforts and the efforts of his present wife. Their savings and investments are the results of their own prudence, hard work, and frugality.

Appellant's first five assignments of error question specified findings of fact made by the trial court.

The trial court entered detailed findings of fact dealing with all of the factual issues of the case. Appellant contends that in some respects these findings are contrary to the preponderance of the evidence; that in other respects they are immaterial; and that some essential facts favorable to her position have not been included.

In the above statement of the case, we have corrected some of the findings of fact to accord with the preponderance of the evidence; have omitted findings which seem to us immaterial; and have included facts not contained in the trial court's findings, where deemed material. These changes, omissions, and additions have not been substantial. There was no prejudicial error in entering the findings, if the facts, as set out above, support the judgment. That is the question presented by the remaining assignments of error.

The criterion for the allowance of alimony upon a petition for modification, as in the first instance, depends on two factors: (1) The necessities of the wife; and (2) the financial ability of the husband. *Duncan v. Duncan*, 25 Wn. (2d) 843, 172 P. (2d) 210. A decree granting alimony can be modified only upon a showing of a material change in the condition and circumstances of the parties relative to these factors. *Bartow v. Bartow*, 12 Wn. (2d) 408, 121 P. (2d) 962.

The question whether there has been a material change in such conditions and circumstances, arising subsequent to the entry of an order allowing alimony, and the question of the propriety and extent of a modification of such order, are questions which are addressed to, and rest within, the sound discretion of the trial court. *Wages v.*

*Wages*, 39 Wn. (2d) 74, 234 P. (2d) 497. Unless it can be said that the trial court has abused its judicial discretion in this regard, its exercise thereof will not be disturbed. *Warning v. Warning*, 40 Wn. (2d) 903, 247 P. (2d) 249. The term "abuse of judicial discretion" does not mean simply the decision of a case by whim, caprice, or arbitrary conduct, through ulterior motives or in willful disregard of a litigant's rights, but contemplates as well a discretion exercised upon grounds or to an extent clearly untenable or manifestly unreasonable. *Holm v. Holm*, 27 Wn. (2d) 456, 178 P. (2d) 725.

There can be no doubt that the financial requirements of appellant have substantially increased since the divorce decree was entered in 1938. This has been due largely to the shrinkage in the purchasing power of the dollar, of which we take judicial notice. *Warning v. Warning, supra.*

But the fact that the wife's financial requirements have increased is not alone sufficient to establish need for increased alimony payments. It must also be shown that there is no other practicable way of meeting the financial problem.

Appellant was unable to satisfy the trial court that she is not presently able to augment her income by gainful employment suitable to her age and physical condition. She was also unable to convince the trial court that it was impossible for her to make substantial economies in her living expenses. In the light of the facts set out above, we do not believe that the trial court abused its discretion in concluding that appellant had failed, on her present showing, to establish a need for increased alimony payments.

In view of this conclusion, it is unnecessary to deal at length with the obvious fact that respondent has the financial ability to make larger alimony payments. It should be noted, however, that while his increase in earning power is pertinent to the question of financial ability to pay increased alimony, it has nothing to do with appellant's need. The increase in earning power is due to respondent's work and good fortune after the divorce. Appellant is not entitled, as a matter of right, to share in the fruits of that work

and good fortune. A former wife may not obtain additional alimony on the theory that such is in keeping with her former husband's present station in life.

The judgment is affirmed.

GRADY, C. J., MALLERY, FINLEY, and OLSON, JJ., concur.

[1]Reported in 266 P. (2d) 789.