[No. 33204.   Department One.   September 15, 1955.]

HOWARD W. HANSON, *Respondent*, v. ROSE M. HANSON, *Appellant*.[1]

[1]Reported in 287 P. (2d) 879.

*Horace H. Davis*, for appellant.

*William L. Hutchins*, for respondent.

FINLEY, J.—This is an action to modify, *i.e.*, to reduce the alimony and child-support payments specified in a divorce decree because conditions, allegedly, have changed since the entry of the decree.

The facts are as follows: Howard Hanson filed a complaint for a divorce on August 21, 1952, alleging: cruelty and personal indignities as ground for divorce; that Rose M. Hanson, the wife, was a proper person to have custody of the three small children of the parties. The complaint stated that a property and settlement agreement had been executed, giving the home, household effects, and a 1948 Ford coupe to the wife, who assumed the mortgage balances due thereon. It was further alleged that the plaintiff husband earned approximately four hundred dollars per month; that forty-five dollars for alimony and sixty-five dollars for support money per child per month (total two hundred forty dollars per month) would constitute reasonable provision for the wife and for the children.

On August 29, 1952, an order of default was entered against the defendant wife, Rose Hanson. By stipulation, this was set aside. Thereupon, an answer and a cross-complaint were filed. The latter prayed that the property settlement be modified to require Mr. Hanson to give his wife, Rose, one half of any annual bonus awarded to him by his employer. The cross-complaint further alleged:

"That the plaintiff has been guilty of cruel treatment of defendant and of personal indignities toward defendant rendering her life burdensome, in that plaintiff has repeatedly told defendant that he no longer cared for her or cared to live with her; that he wanted a divorce; that he was associating with another woman; that he has, for several months prior to the commencement of the action against

defendant, repeatedly discussed and demanded a divorce; that under the guise of performing special services after hours at his work, he has been improperly associating with another woman, and he has confessed to defendant of such improper association. . . ."

On March 11, 1953, a divorce was awarded to the wife, Rose Hanson, the appellant herein. The decree approved the property and settlement agreement, modified as indicated above, to divide any annual employee bonus equally between the parties. It awarded forty-five dollars per month alimony and sixty-five dollars support money per child per month to the wife.

On March 13, 1953, Howard Hanson married his present wife, who bore him a child on September 25, 1953. As a further result of the marriage, Mr. Hanson acquired the social, if not the legal, responsibility for the support of the four minor children of the second Mrs. Hanson by a previous marriage. Her former husband was killed in an automobile accident, apparently in 1951, while serving in the United States armed forces.

At the time of her marriage to Howard Hanson, the present Mrs. Hanson was receiving two hundred eighty dollars per month from her deceased soldier husband's military insurance, one hundred forty dollars per month from the veteran's administration, and ninety dollars per month from social security or county welfare, for the care and support of her four children. In addition to this total of five hundred ten dollars per month, there was some allowance from social security and from the veteran's administration to her personally.

After her marriage to Howard Hanson, the veteran's administration discontinued payment of any funds for her personally, and further required that the one hundred forty dollars per month for the four children be treated as trust funds and expended solely under court order, except the sum of one hundred dollars per year for clothing allowance for the children. In April, 1954, the monthly insurance payments of two hundred eighty dollars ceased when the entire

proceeds of her former husband's military insurance became exhausted.

Mr. Hanson's gross salary increased after the divorce from four hundred dollars to four hundred twenty-five dollars per month. From the latter sum, there are deductions for social security, a $7.50 monthly premium for a ten thousand dollar life insurance policy, and a contribution of $1.50 per month to the United Good Neighbors Fund. In view of the dependents he can claim, Mr. Hanson pays no income tax. His gross take-home pay should approximate four hundred ten dollars per month.

In April, 1954, Mr. Hanson instituted the present modification proceedings, asking that the alimony payment of forty-five dollars per month be discontinued, the child-support payments be reduced from sixty-five dollars to thirty dollars per month, and that the obligation to pay any portion of any annual bonus from his employer be canceled. The trial court canceled Mr. Hanson's obligation to pay alimony of forty-five dollars per month and his obligation to divide equally any annual bonus from his employer, but required him to pay out of any such bonus the sum of one hundred dollars to the first Mrs. Hanson, apparently as alimony; and, in addition, to pay therefrom for any extraordinary medical or dental expense of the children in excess of twenty-five dollars per year per child. The first Mrs. Hanson has appealed. All of her assignments of error question and deny the propriety of the above-described modification order of the trial court.

At the hearing on the petition to modify, the trial judge stated quite forthrightly that the problem of how to stretch Mr. Hanson's income to provide adequately for all of his family and marital responsibilities was a perplexing and a most difficult one. We are certainly inclined to agree with this, but, generally speaking, we feel that the end result which will be achieved under the modification ordered by the trial judge is a proper and a desirable one. Thereby, the first Mrs. Hanson and the three children in that family unit will have $195 per month, or proportionately $48.75. Out of any employee bonus, she will have one hundred dol-

lars personally, and any medical or dental expenses in excess of twenty-five dollars per year per child will be paid. Mr. Hanson will have $215 ($410 salary less $195 paid to his first family), or proportionately, $71.66 per month, available for himself, his second wife, and the minor child born of this marriage, for whose support he is legally responsible.

But the foregoing computation as to Mr. Hanson does not give a realistic picture of his present situation. While he is not legally responsible for the support of the four other minor children (in his new family unit) born of the previous marriage of his second wife, nevertheless, he would be condemned morally and socially in his community, and we think properly so, if he should severely discriminate against these four children in terms of food, shelter, clothing, medical and other care. There is the sum of ninety dollars per month available for them from social security or county welfare, and something additional for special needs is undoubtedly available by court order from the one hundred forty dollars per month paid by the veteran's administration into the trust found account, mentioned hereinbefore. Adding the above social security payment of ninety dollars to Mr. Hanson's two hundred fifteen dollars per month, gives a net total of three hundred five dollars per month available for the present family unit of Mr. Hanson, or $43.57 per person.

We realize the amount available to the two families, considered on a per-person basis, is not to be emphasized unduly, because, for example, the expense or cost of housing or shelter should not be calculated or based on an exact amount per individual member of a family to the same extent as the cost of other items in a family budget, particularly food. In discussing the total funds available to each family, we also realize that Mr. Hanson is not *legally* responsible for the four minor children of his present wife by the former marriage. This court has said that a father who remarries after a divorce has a legal right to do so, but that he has a primary responsibility for the support of his children of a former marriage, as well as a responsibility to the second wife and the children of such marriage.

In *Shattuck v. Shattuck*, 141 Wash. 600, 251 Pac. 851, this court indicated that the problem is one of the needs of *all of the children of the husband*, and that his income should be divided or adjusted among the children according to their needs.

■ In *Herrett v. Herrett*, 80 Wash. 474, 479, 141 Pac. 1158, this court said:

"The law recognizes marriage as a civil contract founded on public policy, and encourages it in the interest of morality. If, then, a divorced husband remarries, he owes a duty to his present wife as well as to the former relation that the law must recognize if it is consistent. While the first wife may have first consideration and her necessities will not be unreasonably curtailed, or her wants ignored, neither will the necessities or wants of the second wife be disregarded. The court *should and will make such adjustment as the relative necessities of the parties demand and the ability of the husband will warrant.* From the record before us, the former order is more consistent with right and reason than is the one appealed from." (Italics ours.)

■ The principles just pointed out from the *Shattuck* and the *Herrett* decisions are practicable rules of reason and equity. They do not require us to be unrealistic in the instant case. The funds available to Mr. Hanson's new family unit will not and, of course, should not as a practical matter be handled separately. In other words, the ninety dollars per month from social security will not be earmarked and expended solely for food and the other needs of the four children of the second Mrs. Hanson, any sums left to Mr. Hanson from his salary, after the payments to his first family, being earmarked solely for the needs of the two adults in the new family unit and their child. Consequently, as a practical matter, it seems obvious that all of the funds available should be considered as a whole in any effort to make a proper and equitable adjustment of Mr. Hanson's income, as between his first family and his second one.

■ Considering the circumstances involved in this case, and with the foregoing discussion in mind, we come now to the question of the propriety of the trial court's order of modification. The basic inquiry is whether, since the entry

of the decree of divorce, there has been a change of circumstances (of which we should take cognizance) in terms of (a) the needs of the first wife and children, and (b) the ability of the exhusband to pay alimony and for child support.

In *Gordon v. Gordon*, 44 Wn. (2d) 222, 266 P. (2d) 786, this court said:

"The question whether there has been a material change in such conditions and circumstances, arising subsequent to the entry of an order allowing alimony, and the question of the propriety and extent of a modification of such order, are questions which are addressed to, and rest within, the sound discretion of the trial court. *Wages v. Wages,* 39 Wn. (2d) 74, 234 P. (2d) 497."

As a result of refinancing, the financial needs of the appellant first wife have been reduced by $42.37, monthly—$15 per month as to the home mortgage, and $27.37 per month as to the installment contract on her automobile. (The automobile is a necessity because of the location of the home of appellant.) Mr. Hanson has remarried, which is permissible under the law of this state after a person has been divorced. He has one new offspring. He is certainly legally responsible for the support of his present wife and the child she has borne him. He is socially, if not legally, responsible for the support of the four minor children he has acquired as a ready-made family unit through his second marriage.

We think the facts presented show a change of circumstances which justify the modification of the original divorce decree as made by the trial court. Furthermore, in our best judgment, the modification as to the disposition of Mr. Hanson's income, worked out by the trial judge, seems to us to be a reasonable and an equitable one in view of all circumstances involved. In reaching this result, we are most mindful of the decisions of this court to the effect that *modification of the provisions of divorce decrees by the trial courts will not be disturbed on appeal in the absence of a showing of abuse of discretion.*

In conclusion, there are two other matters that should be

mentioned: First, the record before us indicates that the one hundred forty dollars per month from the veteran's administration is in the nature of trust funds for the education and special needs of the four children of the present Mrs. Hanson by her former marriage. If this was not the case, and the one hundred forty dollars, or any substantial part of it, upon proper application, could be made available for the everyday expenses or ordinary care of the children, then our view of the matter would be different. Second, the present modification order could be construed as, in effect, a cancellation of any alimony allowance. Under our decisions, this interpretation of the order would deprive the appellant of any right to modify or reinstate the alimony provisions *in the future*, even if need therefor could be clearly demonstrated. While the end result will be the same from a financial standpoint, we think the modification order should be revised *to provide clearly for the payment of alimony* in the sum of thirty dollars per month, and for the payment of support money in the sum of sixty dollars per month per child.

The case is remanded with directions that the trial court's order be revised as indicated herein; otherwise, the action of the trial court should be affirmed. It is so ordered.

HAMLEY, C. J., and SCHWELLENBACH, J., concur.

DONWORTH and OTT, JJ., concur in the result.

November 2, 1955. Petition for rehearing denied.